## MICHAEL HARRER *et al.*

### *v.*

## DEBORAH WALLNER.

1. MARRIED WOMAN—*deed executed by, when under eighteen years of age, void.* A deed executed by a married woman under the age of eighteen years, for the conveyance of her estate, is void, and not merely voidable; hence she is not required to take any steps after coming of age to avoid it

2. ESTATE BY THE ENTIRETY—*when it exists.* Prior to the act of 1861, a deed of conveyance to a husband and wife created a joint estate in them by the entirety during their natural lives, and to the survivor on the death of either, and the rights of the parties to a vested and absolute title to such an estate could not be changed, modified or affected by that act.

3. SAME—*nature and peculiar features.* The estate by the entirety vests in the survivor absolutely and in fee, and, by the destruction of the estate of one, it enures to the other. Neither can have partition, nor can either sell the estate so as to affect the rights of the other, and when their rights to the property are invaded, a suit for the injury, or for the recovery of the property, must be joint, because the property and the right to its enjoyment is joint during coverture.

4. SAME—*rights and powers of wife in, not affected by act of* 1861. From the very nature of the estate by the entirety, the act of 1861 could not remove the disabilities so as to confer upon the wife any more right to sue for any interest in property held by such title during coverture, than she had before; hence the Statute of Limitations can not run against a wife who was tenant by the entirety at the time of the passage of the act of 1861, so long as coverture continues.

5. SAME—*converted by divorce into a tenancy in common.* Where a husband and wife, who are seized of an estate by the entirety, are divorced, the estate by the entirety is destroyed, and they become tenants in common.

6. CHANCERY PRACTICE. A wife, who is seized of an estate by the entirety with her husband, may include, in a bill against him for a divorce, a prayer for a partition of the land which, by virtue of the divorce, will become their property as tenants in common, as well as for alimony out of his portion of the property, and may also make all parties claiming any interest in the land through or under any pretended or real conveyance from her and her husband, or either of them, and settle all the rights of the parties in the one suit.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding.

Messrs. NISSEN & BARNUM, for the appellants.

Messrs. MONROE & LEDDY, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee and Herman Wallner intermarried some time in the month of February, 1852, and about that time, and soon after, her stepfather, Thomas Jaworski, conveyed to them two 20-acre tracts of land, one in section 26 and the other in 27, township 41 north, range 13 east, 3d P. M., in Cook county. As the evidence shows, Herman deserted Deborah within about three months after the marriage, and they have not lived together since.

There is no question in the case that Jaworski purchased the land from Tuthill King, the patentee from the government, and thereby became invested with the title in fee; but it is claimed that Herman and Deborah subsequently reconveyed the land to Jaworski, but in so doing, a mistake was make, in describing the grantee as "Lawreski," on the 24th of December, 1852, and that afterwards Jaworski conveyed these and other lands about the same time, to Newkirk and Ward, from whom appellants claim, by *mesne* conveyances, to have derived title.

It is claimed, and we think the evidence shows, that appellee, at the time of her marriage, was not of age, nor was she when it is claimed she and her husband reconveyed to Jaworski in December, 1852, although there may be some criticism of the testimony of the witnesses as to other dates and facts connected with their testimony, as to her minority. She and her mother both testify that she was but fourteen years of age when she was married. She fixes the date of her marriage at the 24th of February, 1852. It appears that the deed from Jaworski to appellee and husband bore date on the 25th of March, 1852, and the mother says it was made about a month after the marriage. Thus this date is fixed with reasonable certainty.

As to appellee's age, both she and her mother would be likely to have remembered. Marriage is always considered so important an event, that most persons always remember it with certainty, and also the age at which it occurs. These things are seldom forgotten whilst memory lasts, by even the most illiterate; and those who can neither read nor write generally know and seldom forget their own ages, and mothers of that description are believed to remember the ages of their children quite as well as the educated and more gifted; and although both may have mistaken other dates, we are satisfied that they were not likely to be mistaken as to that fact.

If this, then, be true, appellee was not fifteen when she is claimed to have joined in the execution of this deed to Jaworski by her and her husband, and if so, then she had the legal and undoubted right, within three years after coming of age, to repudiate the conveyance, even if it was made as claimed. Again, she was then under the disability of marriage, which did not cease until she obtained a divorce, on the 6th of January, 1874. Not being of the age, then, required by the statute, to convey by joining with her husband, the deed was unauthorized, and passed no title, for want of power to make the deed claimed by appellants as reinvesting the title in Jaworski, even if it was made as claimed.

The 17th section of the Conveyance Act of 1845, (R. S. 1845, p. 106,) provides that: "Whenever any husband and wife, residing in this State, shall wish to convey the estate of the wife, it shall and may be lawful for said husband and wife, she being above the age of eighteen years, to execute any grant, bargain, sale, lease, release, foeffment, deed, conveyance or assurance in law whatever, for the conveying of such lands, tenements and hereditaments." The remainder of the section relates to the execution and acknowledgment of the deed when so made, but has no relation to this case.

Have, then, these requirements been answered? The husband and wife were residents of this State. The wife had an estate in the land, but she was not eighteen years of age, and hence was not authorized to join with her husband to make

the conveyance, but it was as declared, negatively, unlawful for her to do so before she was of that age. Married women were not then empowered to make a conveyance in any manner without joining with their husbands, and then only when they were of the age of eighteen years or upwards. This deed, if it was ever made, was without the pretense of power on the part of the wife.

This is better illustrated, and made more obvious by a reference to the common law on this subject. By it a married woman was utterly powerless to convey her real estate by deed poll, feoffment or other instrument. She could only accomplish that purpose by levying a fine or suffering a recovery. Hence, it is seen that there is no authority in the common law that can be invoked to aid the execution of this deed, or to render the conveyance operative. Not being enabled by the common law to so convey, married women derive all of their power to convey from the statute alone; and a conveyance, to be valid, or to pass any rights, the party must conform to the substantial requirements of the statute; and that she should be of the age of eighteen years or upwards, is made by the statute absolutely essential to the validity of the deed, or to pass title. This deed, under the statute, was void, and, being void, she was not bound to repudiate it within three years after arriving at the age of eighteen.

Had she been under that age, and unmarried, and made a deed, it would have been only voidable, and she would have been required, within three years after coming of the age of eighteen, to take the necessary steps, as this court has repeatedly held, to avoid it. But the statute having declared that it shall only be lawful for a married woman, who is over eighteen years of age, to make a deed to her property by joining with her husband in a conveyance for the purpose, a deed made contrary to its provisions is void, and not merely voidable.

This view of the question was not presented by appellee's counsel, but it is so obvious and essential to a correct decision of the case, that we have deemed it proper to give it full weight in its decision.

There was much evidence on the question whether or not appellee and her husband made a deed reconveying the lands in controversy to Jaworski. All the evidence considered, the question is left, we think, in great doubt. It is contradictory, uncertain, and perhaps irreconcilable. But from what we have said, it will be seen that it is wholly immaterial whether or not the deed was made, and hence we have not discussed the evidence on that question.

We now come to the question whether or not appellee has now the right to urge the invalidity of this deed against the claims of appellants. Or is she barred by *laches* or the statutes of Limitation, from asserting her rights? Appellants claim to deraign title by a connected chain from King to themselves, through Jaworski, he having subsequently conveyed to Newkirk and Ward, from whom appellants derive title. And it is not questioned that they have claim and color of title made in good faith, with the requisite possession and payment of taxes to create an absolute bar under the act of 1839, if appellee is not within the saving clause of the statute. And she is barred under the act of 1835, appellants having regular connected chain of title in law deducible of record from the United States government, unless she is within the savings of that law.

The evidence, we think, sufficiently establishes the fact that appellee became of the age of eighteen in 1856, and the three years expired within which she would have been required to take the requisite steps to assert her title, under the act of 1839, had she been sole, but she then was, and had been before this adverse claim arose, a married woman. Had she been sole, and a minor, at the time the adverse possession was taken and the payment of taxes was commenced, then a different question would have been presented. But she was married when she became of age, and when the taxes were paid in connection with possession under claim and color of title, made in good faith. In fact, she was married when every act was done which is claimed to conclude her rights.

But in 1861 the act was adopted authorizing married women to hold separate property as though they were sole and unmar-

ried, free from all control of their husbands. And if it be contended that, by that act, her disability was removed, and she was free then to declare the deed from herself and husband to Jaworski void, and assert her right to the land, if such a deed was made, or to assert her claim before the bar of the statute had run in 1868, after the passage of that law, the question is presented whether she was under such disability as to bring her within the savings of the statutes until she became discovert, in January, 1874.

Under the law prior to the act of 1861, the conveyance Jaworski made to appellee and her husband created a joint estate in them by the entirety during their natural lives, and to the survivor on the death of either. And under the law as it then stood, the parties to a vested and absolute title to such an estate were not and could not be changed, modified or affected by the act of 1861. We have heretofore held that prior vested estates and rights were in nowise affected by that act, and that it was incompetent for the General Assembly to divest or change such rights. Hence they took an estate by the entireties, and not an estate as tenants in common, as seems to be supposed by appellee's counsel.

In the case of *Cooper* v. *Cooper*, 76 Ill. 57, the conveyances were made to husband and wife, after the passage of the law of 1861. And the decision was placed on the ground that the rule was changed by that enactment, from an estate by the entireties to an estate in fee, held by the grantees as tenants in common. That decision was placed on that act, and hence it has no bearing on this question, as this estate was created before the statute was adopted.

Now, this estate by the entireties is peculiar. The possession of one is the possession of both. The estate is joint for life, and descends to or vests in the survivor absolutely and in fee; and by the destruction of the estate of one, it enures to the other. Neither can have partition, nor can either sell the estate, so as to affect the rights of the other; and when their rights to the property are invaded, a suit for a recovery for the injury or for the property, must be joint, because the property

and the right to its enjoyment are joint, during coverture. Then, appellee could not sue for and recover any interest in the land without joining her husband in the action, until the coverture ceased. It is unlike tenants in common, where either may sue and recover for an injury to the estate, and may use the names of his co-tenants. Hence it follows that appellee, being under the disability of coverture until January, 1874, had no power to sue, until that relation was terminated. Had they been tenants in common, it might have been otherwise, but we do not decide that question, as it is not before the court in this case.

From the very nature of the estate and the rights of the parties therein, the act of 1861 could not, as to appellee's rights, remove her disability. She had not, nor could she have, any more right to sue for the property, or any interest in it, after the passage of the law, than she had before that time, until coverture was removed. Hence the statutes of Limitation, and all that was done under them, did not operate to produce a bar.

What effect, then, did the granting of the divorce have on this estate or the rights of the parties therein? The relation of husband and wife was thereby terminated, and with it all marital duties. Their interests and duties from thenceforth, as related to each other, were as though they never existed.

This estate by the entireties is essentially a joint estate, although it differs in one or two particulars therefrom. The unities are the same, and the *jus accrescendi* obtains, but they only hold severally *per tout et non per my*, whilst joint tenants hold by halves and by the whole. But it is believed that when the estate of one is destroyed, it enures to the other, as in the case of death or otherwise. So, where the unity of the husband and wife is destroyed by death, the survivor takes the whole estate.

Blackstone says there are several means of destroying or severing a joint estate, as, by disuniting their possessions. "If two joint tenants agree to part their lands, and hold them in severalty, they are no longer joint tenants, for they then have

no joint interest in the whole, but only a severalty interest respectively in the several parts;" and the jointure may be destroyed by one selling his share, and thus converting it into a tenancy in common. It is further said that, when, by any act or event, different interests are created in the several parts of the estate, or they are held by·different titles, or if merely the possession is separated, so the joint tenants have no longer the four indispensable properties of sameness of interest, and undivided possession, a title vesting at one and the same time, and by one and the same grant, the jointure is instantly divided.

In this case the husband conveyed his interest, which would, had it been a joint tenancy, destroyed the unity of title, and it would have been converted into a tenancy in common. This, of itself, had this been a joint tenancy, would have changed the entire relation of the parties, and his conveyance had that effect, if he had power to sell.

But the power to hold jointly arose from the fact that they were married when the conveyance was made. Had the marriage not existed, the parties would have taken as tenants in common. It was that circumstance, and that alone, which gave to them the joint life estate, and the right to joint possession. The divorce destroyed the relation which gave the joint right, and with it the right itself. After the parties were divorced, they were no longer entitled to hold jointly, but from thenceforth they held in severalty; nor were they entitled to joint possession. When the very thing which, by operation of law, gave them a joint estate, was destroyed by operation of the same law, the joint estate ceased, and they then became vested with an estate *per my* as tenants in common. They, by that act and operation of law flowing from it, are not jointly entitled to possession, but the unity of title and the unity of estate no longer existing with the incidental right of joint possession, it inevitably follows that they then became tenants in common.

Our statute has destroyed joint tenancies, unless the parties expressly stipulate in the deed of conveyance that such an estate is thereby created. The estate with the *jus accrescendi*

is not being favored by our law, and the termination of the marriage relation having worked a change in the rights of the parties in the estate, the courts should rather hold that the change is broad enough to convert it into an estate in common, than to hold that, whatever change was made, it left the right of survivorship. But, on principle, we are satisfied the decree of divorce had the effect to make them tenants in common, and that appellee thereby became entitled to partition.

There is another question which may deserve a notice, and that is, whether appellee had a right to file a bill for partition until after she was divorced. Situated as this case is, we can see no objection to it. She applied for a divorce in the same bill, and had a right to claim alimony in this land, and in the same case to have her rights in this property settled between her and her husband. Thus far all will concede that there was no error, and if so, why not make appellants parties, as they were claiming that they had acquired not only her right, but that of her husband in the property. They claimed to have an interest in the property, and she had a right to bring them before the court, that they might be bound by the decree of the court settling her rights, and to be freed from again litigating all the facts and settling all of the legal questions in another suit with them for the recovery of her interest in the land.

We perceive no error in the record, and the decree of the court below must be affirmed.

*Decree affirmed.*