SAMUEL HEYMAN

*v.*

REBECCA HEYMAN.

*Opinion filed June 23, 1904.*

1. DIVORCE—*adultery may be established by circumstantial evidence.* The offense of adultery, in divorce proceeding, may be sufficiently proved by circumstances which raise the presumption of cohabitation and unlawful intimacy, and direct proof of the fact of adultery is unnecessary.

2. SAME—*power of the court to settle business interests of parties to a divorce proceeding.* Where a bill for divorce against the husband alleges that complainant is the owner of the defendant's business, which he is conducting in his own name under a power of attorney from complainant, the court, on granting the divorce, has power, under section 17 of the Divorce act, to determine the interests of the parties in the business and decree a settlement thereof.

3. HUSBAND AND WIFE—*business partnership may exist between husband and wife.* Section 6 of the act relating to husband and wife, providing that husband and wife may contract with each other without restriction, except that the wife cannot carry on any partnership "except with the consent of the husband," authorizes a husband and wife to form a partnership with each other.

4. PARTNERSHIP—*existence of partnership may be implied from circumstances.* Proof of an express agreement between husband and wife to enter into a business partnership is not essential to the existence of the partnership, where that fact may be fairly implied from the circumstances proven.

5. SAME—*fact that parties do business in firm name is an element for consideration.* That parties do business in a firm name is a circumstance which is to be considered in determining whether a partnership exists between them.

6. SAME—*chancellor's finding as to existence of partnership not lightly disturbed.* A finding by the chancellor as to the existence of a partnership, based upon conflicting oral testimony heard in open court, will not be disturbed, on appeal, unless manifestly against the preponderance of the evidence.

7. SAME—*a partnership is dissolved if individual partner is adjudged bankrupt.* Adjudication of the bankruptcy of a member of a firm as an individual dissolves the partnership by operation of law, and the remaining partner alone is entitled to the possession, disposition and control of the partnership effects.

8. SAME—*what amounts to dissolution of partnership.* In the absence of interference by a court of equity, a partnership is dissolved

when one partner takes possession of the property and business and excludes the other partner from participation therein.

9. JUDGMENTS AND DECREES—*less relief may be decreed than claimed in the bill.* The fact that the complainant in a divorce proceeding alleged sole ownership of defendant's business whereas the decree found her to be the owner of but one-half thereof, does not require reversal of the decree, particularly where the proof would have justified a decree finding sole ownership as alleged.

*Heyman* v. *Heyman,* 110 Ill. App. 87, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

The following statement of facts has been made by the Appellate Court, and precedes, as a preface, the opinion of that court deciding this case, to-wit:

"This is a bill for divorce filed by appellee, charging appellant with adultery and extreme and repeated cruelty. It is also alleged that, prior to 1890, she was the owner of a valuable business, the management of which she entrusted to appellant, from the profits of which the family was supported; that in 1890 he induced her to execute and deliver to him a power of attorney to manage and transact such business; and that thereafter he substituted his name in place of her name, and is now in full possession of said business, and all its assets, and is carrying on the same at No. 106 Clark street, Chicago; that said business, worth about $100,000.00, consists in loaning money upon pledges, in buying and selling jewelry, and like goods, and in the purchase of city and county scrip; that he has expelled her from said business, and threatens to sell the same, and to depart the United States. Among other things she prays for an injunction; that the court by its decree may settle and determine her property rights; that a receiver may be appointed to take possession of, manage and control said business and property during the pendency of the

suit; the prayer for general relief is added. The co-respondent and the First National Bank of Chicago were also made defendants. An injunction was issued without notice and without bond.

"The answer filed denies the allegations of cruelty and of adultery. It denies that appellee owned said business, as charged in the bill. It asserts that he is in full possession of the business and its assets, and is conducting the same in his own name as his own business, except so far as he is restrained by said injunction. It denies that said business is worth $100,000.00 or upwards, or that he expelled appellee therefrom, or threatened to sell the same and to depart with the proceeds; and it denies that she was the owner of any business prior to 1890, or at any time since, or that she ever turned any business over to his management; and asserts that he is carrying on the same business he started in 1879. It alleges that, when he married appellee, she had no money or means, and never had any except as he provided for her; that in 1890 he became involved, and asked her to let the business be conducted in her name, which was done for about two months, when he resumed his own name, and is now conducting the business in his own name; that appellee never at any time had any interest in said money or business. Further allegations are made relating to the manner of conducting said business; and he sets up his history from 1862 to the date of the filing of the answer; his treatment of his family, and their conduct towards him; and says that the value of the jewelry now owned by him amounts to about $15,000.00.

"The answer of the bank shows a deposit of $9963.36, and special deposit of $20,000.00 in United States bonds.

"The answer of the co-respondent denies the allegations of misconduct, and sets up in detail the history of her acquaintance with appellant.

"The cause was heard in open court. July 16, 1902, the chancellor entered a decree herein, finding (among

other things) appellant guilty of the charge of adultery, dissolving the marriage bond, and giving the custody of the minor children to appellee.   It also found that said business was a co-partnership business and was carried on by appellee and appellant 'as co-partners, and owned by them jointly as equal co-partners, and that the said co-partnership business was dissolved by the filing' of the bill herein;  that appellee at the inception of such business put into it $600.00 in goods and $5000.00 in cash, and is equitably entitled to have first re-paid to her the said sum of $5600.00, without interest, out of said partnership property, and then to have one-half of the remaining assets of said partnership as of the date of the filing of the bill.

"The cause was referred to a master to take an account and a receiver was appointed of all such partnership property."

From the decree entered by the circuit court an appeal was taken to the Appellate Court where such decree was affirmed.   The present appeal is prosecuted from such judgment of affirmance, entered by the Appellate Court.

THORNTON & CHANCELLOR, (JAMES D. ANDREWS, of counsel,) for appellant.

ALEXANDER SULLIVAN, and GEORGE W. PLUMMER, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The bill, filed in this case by appellee against the appellant for divorce, charged the appellant with adultery, and with extreme and repeated cruelty.   The chancellor in his final decree held that the charge of adultery was sustained by the proofs, and granted the divorce upon that ground.   The first reason, urged by the

appellant for the reversal of the decree, is that the evidence does not sustain the charge of adultery. We are unable to agree with counsel for the appellant in this contention, and think that the court below decided correctly in holding that the charge was established by the testimony.

The evidence upon the subject was conflicting. The appellant and the co-respondent denied that they had ever been guilty of adultery with each other, and several witnesses were introduced to sustain the good character and reputation of the co-respondent. But some ten witnesses were produced upon the trial by the appellee, who had no interest in the questions involved, and whose statements sustained the finding of the court below. A preponderance of the evidence only is necessary to establish a charge of adultery. (*Lenning* v. *Lenning*, 176 Ill. 180). The offense of adultery may be sufficiently proved by circumstances which raise the presumption of cohabitation and unlawful intimacy. It is not necessary to prove the direct fact of adultery. The fact is inferred from circumstances that lead to it by fair inferences, as a necessary conclusion. It has been said that "the only general rule that can be laid down upon the subject is, that the circumstances must be such, as would lead the guarded discretion of a reasonable and just man to the conclusion." (*Stiles* v. *Stiles*, 167 Ill. 576).

The co-respondent in the present case was in the employ of the appellant in his store as a clerk and bookkeeper. Witnesses testified that the co-respondent and appellant frequently retired to a room in the back part of the store alone at night, and remained together frequently for nearly an hour after the store was closed and the lights were put out. There was testimony to the effect that the appellant and the co-respondent went together at night to certain hotels and remained until the next morning, and also that the appellant went to the apartment of the co-respondent and remained until late

at night. Witnesses also testified that they saw the appellant embrace and fondle the co-respondent, and saw them walk together with his arm around her in the park at night, and saw him with her at night in restaurants and places of resort. Their association in this manner was frequent and constant, and was observed by a great many witnesses.

The evidence in this case was all heard in open court, and, as will appear from the statement above made, was conflicting in character. The chancellor saw the witnesses, and heard them testify, and was in a much better position to judge of their credibility than we are from a perusal of their testimony, as it appears in the record. Under such circumstances a court of review will not disturb the findings of fact of the chancellor, unless it is apparent that error has been committed. (*Dowie* v. *Driscoll*, 203 Ill. 480; *Hardy* v. *Dyas*, 203 id. 211). In *Biggerstaff* v. *Biggerstaff*, 180 Ill. 407, we said (p. 411): "The law is well established in this State that where a cause is heard by the chancellor, and the evidence is all, or partly, oral, it must appear that there is clear and palpable error before a reversal will be had." In the present case, no such clear and palpable error appears to have been committed by the court below in making its finding upon this branch of the case, and, as the chancellor heard and saw all the witnesses, we are unable to say that his conclusions as to the charge of adultery are not correct and supported by the evidence. Where the testimony is conflicting, and the conclusions to be drawn from it depend largely upon the credit, which should be accorded to the different witnesses, and to the weight and value of their testimony, and where the chancellor has a superior opportunity for forming an opinion as to the relative merit and weight of the testimony, given by the several witnesses, whom he sees, and whose testimony he hears, his findings will not be reversed where it appears, as it does appear here, that he has not clearly

210—34

and unmistakably fallen into error. (*Arnold* v. *Northwestern Telephone Co.* 199 Ill. 201).

*Second*—After decreeing a divorce between appellant and appellee for the reasons above stated, the court proceeded to render a decree, which found that the pawnbroking business, described in the bill, was carried on by appellant and appellee as partners. The decree further found that the partnership was dissolved by the filing of the present bill on December 7, 1900, and that the appellee had originally put into the business a certain sum of money, and was equitably entitled to have that sum first re-paid to her without interest out of the partnership property, and that she was entitled to one-half of the goods, property and credits after deducting said sum. It was further ordered by the decree, that the cause should be referred to a master in chancery to ascertain and report an inventory of the property, belonging to the partnership at the time of the filing of the bill, with orders to the parties to produce books and papers and submit to examination. It was further ordered, that a receiver be appointed of the partnership assets, and that appellant assign and deliver to the receiver all of the partnership property of every kind and character, and all evidence relating to the property and business. As to the correctness of this part of the decree, we have had much difficulty in coming to a decision, but have finally concluded that the decree does substantial justice between the parties, and should be allowed to stand.

In the first place, it is contended by the appellant, that a partnership cannot exist between husband and wife. Such seems to be the general rule in other jurisdictions than Illinois. It is said by Bates in his work on the Law of Partnership, (vol. 1, sec. 139), that the preponderance of authority, even under the broadest statutes, is in favor of the position that a married woman has not capacity to contract a partnership with her husband. Such, however, cannot be the law in Illinois.

Section 6 of chapter 68 of the Revised Statutes of Illinois, being the act to revise the law in relation to husband and wife, provides as follows: "Contracts may be made and liabilities incurred by a wife, and the same enforced against her, to the same extent and in the same manner as if she were unmarried; but, except with the consent of her husband, she may not enter into or carry on any partnership business, unless her husband has abandoned or deserted her, or is idiotic or insane, or is confined in the penitentiary." (2 Starr & Curt. Ann. Stat. —2d ed.—p. 2122). It has been held by this court that, under the existing law in this State, married women are placed on the same footing as *femes sole* in respect to all property rights, including the means to acquire, protect and dispose of the same; and that all restrictions upon the power of husband and wife to contract with each other, except so far as they are expressly retained, are removed. It thus appears that husband and wife may contract with each other without restriction, except that the wife may not enter into or carry on any partnership business "except with the consent of her husband." The plain inference is, that she may carry on a partnership business, if she has the consent of her husband, and, as she may make contracts with him, there is no reason why she may not make a partnership contract with him, or a contract for a partnership business with him, where she obtains his consent thereto. The very fact, that a partnership is formed between husband and wife, pre-supposes that it is done with his consent. In the case at bar, all the evidence upon the subject tends to show that, if there was a partnership between appellant and appellee, it was with the consent of appellant. There being such consent, there is no want of power, under the statutes and decisions in this State, in the husband and wife to form a partnership with each other. So far, therefore, as the validity of a contract of partnership, if any existed between the appellant and the appellee, is concerned, it

cannot be said that such contract is invalid. (*Dressel* v. *Lonsdale*, 46 Ill. App. 454; *In re Kinkead*, 3 Biss. 410).

In the second place, it is contended by appellant that, even if such a contract of partnership could lawfully be formed between the appellant and appellee as husband and wife, yet that the bill in this case contained no allegation as to the existence of any such partnership, and the proof fails to show that there was such a partnership. In this connection also it is insisted by the appellant that, in a bill for divorce and for alimony, a court of chancery has no jurisdiction to pass upon the question whether or not there was a business partnership between husband and wife, and to dissolve and settle that partnership in such a proceeding.

Section 17 of the Divorce act of this State provides as follows: "Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable." (2 Starr & Curt. Ann. Stat.—2d ed.—p. 1448). The bill in this case alleges, in substance, that the appellee, complainant below, was the owner of the business in her own right, and that she merely trusted the management of it to her husband, the appellant. The bill also states, in substance, that the appellant induced appellee to execute to him a power of attorney in writing to manage and transact the business, and, after the execution of the same, substituted his name in place of that of appellee, and took possession of the business, and of its property, and bank account, and carried on the same, the business consisting of loaning money on pledges, buying and selling jewels, and such goods and merchandise as are usually carried in a jewelry store; and, also, that appellant expelled appellee from the business and its assets and property, and threatened to sell the same out, etc. After praying for divorce and alimony, the bill

also prayed "that the court by its decree settle and determine the property rights of your oratrix in the said business and to restore her to the full possession and enjoyment thereof, and that a receiver may be appointed by the court to take possession of, manage and control said business and property during the pendency of this suit, and that your oratrix may have such further and other relief in the premises as may seem meet to your honors, and restore her to full possession and enjoyment thereof." There is proof, tending to sustain the truth of these allegations in the bill, and this being so, it is certainly true that the appellant held the title and possession to property, which equitably belonged to his wife. Undoubtedly, therefore, under section 17, a court of chancery could compel a transfer thereof to be made by the appellant to the appellee upon such terms as should be deemed equitable. The court in its decree substantially held that the appellee owned one-half of the goods and property embarked in the business, and was entitled to be put in possession of the same. The decree, therefore, was within the power conferred upon a court of chancery by section 17 of the Divorce act.

In *Harrer* v. *Wallner*, 80 Ill. 197, where a husband and wife, who were seized of an estate by the entirety, were divorced, it was held that the estate by the entirety was destroyed, and that they became tenants in common; and that the wife might include in a bill against her husband for a divorce a prayer for a partition of the land, which by virtue of the divorce would become their property as tenants in common, as well as for alimony out of his portion of the property, this court there saying: "There is another question which may deserve a notice, and that is, whether appellee had a right to file a bill for partition until after she was divorced. Situated as this case is, we can see no objection to it. She applied for a divorce in the same bill, and had a right to claim alimony in this land, and in the same case to have her rights in

this property settled between her and her husband." If, in a suit by a wife against the husband for divorce and alimony where they were tenants in common as owners of a piece of real estate, a court of equity could, in the divorce suit, decree a partition of the land between them as tenants in common, we see no reason why, if a business partnership existed between them, a court of chancery could not, in a bill for divorce and alimony, settle their partnership interests as between them, so as to give the wife her own interest in the partnership property.

In *Cutler* v. *Cutler*, 188 Ill. 285, where it appeared that it was adjudged in divorce proceedings, instituted by the husband, that the wife was the owner of certain residence property subject to the husband's homestead and dower rights, it was held that her title could not be attacked by the husband upon her filing a bill to set off his homestead, it being there said by the court: "The adjudication in the proceedings for divorce with reference to the finding of the title of the premises in Jessie Warner Cutler, and the husband entitled to a homestead and inchoate right of dower, was a complete adjudication of the rights of these parties to the premises in controversy." (See also *Baker* v. *Baker*, 69 Ill. App. 461).

Even if the court was in error in using the term "co-partnership," the use of the wrong word to designate the appellee's interest was not material. The court found that, after taking out a certain sum alleged to have been originally put into the business by appellee, she was entitled to one-half of the goods and property in the business. That is to say, the court found that she and her husband each had one-half interest in the property after making such deduction in her behalf, and if the word, "co-partnership," had been omitted, the decree correctly designated the interests of the parties in the property. If appellee was entitled to one-half of the personal property after the deduction specified, and the husband was in possession of it, the court had power to require him

upon an ascertainment of the amount to deliver to her her half of the property, or pay her one-half of its value.

There is testimony in the record, which justified the court in finding that the husband and wife were equally interested in the property. It was accumulated by the joint exertions of the husband and wife. It is true that there is no evidence of an express agreement of partnership between appellant and appellee, but a partnership may exist under a verbal agreement, and without written articles of agreement. The existence of a partnership may also be implied from circumstances. (*Kelleher* v. *Tisdale*, 23 Ill. 354; *Bopp* v. *Fox*, 63 id. 540; *Lintner* v. *Millikin*, 47 id. 178; *Haug* v. *Haug*, 193 id. 645). In the case at bar, the proof shows that the business was carried on for the benefit of both appellant and appellee as the heads of the family. Appellee and her husband both took responsible parts in the management of the business. She looked after the store as well as he, spending a good part of the day there. She made loans, and built up the business by her labor. He often spoke of her as his partner, and when application would be made to him in reference to some business matter, he would reply that he could not decide upon such application until he consulted his partner. Sometimes, when they did business at one place in the city of Chicago, the business would be conducted in her name, and sometimes when business was done at another place, it would be conducted in his name. For years during the latter part of the time before the present bill for divorce was filed, the business was conducted under the name of "S. Heyman & Co." and "Samuel Heyman & Co." and "Heyman, S. & Co." The fact, that parties thus do business under a firm name, is a circumstance which, although not conclusive by itself, may be considered by a court or jury, in connection with other circumstances, in determining the question whether or not a partnership exists between the parties. Here, the fact that the business was con-

ducted in the name of S. Heyman & Co. coupled with the fact that both appellant and appellee, his wife, each personally gave attention to the business, raises a strong presumption that they were co-partners in fact, and while such evidence is not conclusive, it cannot be said that, with other evidence tending to establish the fact of a partnership, it was entirely overcome by the testimony of appellant and his witnesses. (*Haug* v. *Haug, supra*). In the latter case of *Haug* v. *Haug, supra,* it appeared that the witnesses upon the question, whether or not there was a partnership, testified orally, as was the case in the case at bar; and it was there held that, the question of the existence of a partnership being a question of fact, and the chancellor having seen the witnesses and heard them testify and considered their credibility, the rule already announced would be applied, that is to say, that, under such circumstances, the finding of the court, the testimony being conflicting, will not be disturbed on appeal, the finding not being clearly and manifestly against the preponderance of the evidence. (*Lane* v. *Lesser*, 135 Ill. 567).

It is claimed, however, that the bill did not proceed upon the theory of a partnership, but alleged that the appellee was the owner of the business; that she originally furnished the capital, and started the business, and herself owned and conducted it, and only employed her husband, the appellant, as her agent. There is much testimony in the case tending to support this theory of the case. The appellee testifies that, when she and her husband came to Chicago from Vicksburg, Mississippi, and St. Louis, Missouri, where they had been conducting a similar business, she brought $5600 which belonged to her, and which she had put into their business. In her statement in reference to this matter she is supported by the testimony of her brother, who claims to have paid over the money to her in Vicksburg, or to have seen it paid to her. Her testimony, and that of her brother,

were supported to some extent by the testimony of a lawyer in Vicksburg. He states that the appellant and a brother of his, named Abraham Heyman, had been in partnership. They lost some goods by an accident on a steamboat, and also by a fire which destroyed their place of business in Vicksburg, and, by suits against the steamboat and insurance companies in Mississippi, they realized quite a sum of money. A part of this money was paid over to appellee, and a part of certain goods was also transferred to her. A bill of sale was introduced in evidence, dated February 10, 1874, and executed in the city of Vicksburg, by the terms of which Abraham Heyman granted, bargained and sold to the appellee, Mrs. Rebecca Heyman, a stock of goods in a certain store in Vicksburg, amounting in value to $600. It was testified by the lawyer, who lived in Vicksburg, that he drew this instrument of transfer. At the same time certain money was paid over. The fact, that the instrument of transfer was made to appellee, and not to appellant, and the fact, that its execution and delivery occurred at the same time with the delivery of the money and was a part of the same transaction, tends to confirm the other testimony that the money in question, amounting to $5600.00, belonged to the appellee. We are unable to say that the finding of the court, that this $5600.00 belonged to appellee, and should be taken out as her contribution to the capital of the firm before a division of the property, was wrong. Although the appellant himself denies that the money belonged to her, but claims that it belongs to himself, yet there was a conflict in the testimony, and we cannot say the finding of the court was so far against the weight of the testimony as to justify us in disturbing it.

It appears that in 1879, appellant filed a petition in bankruptcy in the United States District Court in Chicago, and that thereafter he received his discharge in bankruptcy. The value of the business at that time is shown by some of the testimony to have been about

$25,000.00, and was conducted in the name of Mrs. Heyman, the business having been conducted in her name from 1875 up to 1882. To his petition for bankruptcy appellant attached a schedule, and in that schedule stated he owned no stock, and had no stock in trade. It is well settled that an adjudication of the bankruptcy of an individual partner of a firm dissolves the partnership by operation of law. (22 Am. & Eng. Ency. of Law,—2d ed.— p. 202). "If a partner is adjudged a bankrupt or insolvent, the partnership is thereby immediately dissolved, because his interest in the partnership assets passes at once to his assignee." (16 Am. & Eng. Ency. of Law,— 2d ed.—p. 700; *Talcott* v. *Dudley*, 4 Scam. 427). Where a partnership is thus dissolved by a decree of bankruptcy against one of the partners, the remaining partner alone is entitled to the possession, disposition and control of the partnership effects. (*Talcott* v. *Dudley, supra*). By this discharge in bankruptcy, the partnership between appellant and appellee, his wife, was dissolved by operation of law, and the possession, disposition and control of the property in the business, whose value was about $25,000.00, remained with the appellee. The appellant, by his petition in bankruptcy, admitted that he had no ownership in that business, because he said in his petition that he owned no stock in trade whatever. The proof in regard to this petition in bankruptcy, and this decree of discharge in bankruptcy, would seem to sustain the allegation of the bill that the appellee was the owner of the business. Her claim of ownership is also sustained by the fact that, on December 12, 1890, appellee executed a power of attorney appointing her husband, Samuel Heyman, as her agent to conduct and transact this very business, that is, to buy, sell, vend and transact the business of jewelry and all kinds of merchandise, to make loans on all kinds of personal property, and sign checks, deeds, records, notes, contracts and other obligations, granting to her husband full power and au-

thority to do and perform every act and thing whatso-
ever, requisite and necessary to be done in and about
the premises. The fact, that appellant accepted this
power of attorney and acted under it as agent of his
wife, tends to sustain her contention that she was the
owner of the whole of the business. She swears that
his removal of her name at various times and putting his
own name in place of it was without her consent and
against her protest. The business was conducted in her
name from 1875 to 1882, in his name from 1882 to 1890, in
her name from 1890 to 1892, and, in his name individually
and in the name of S. Heyman & Co. from 1892 to De-
cember 7, 1900. Appellant gives as a reason for putting
the business sometimes in his wife's name instead of his
own, that he thereby intended to avoid his liability to
his creditors, or that he did it because he feared the
pressure of claims against him, or of litigation in which
he was involved.

Inasmuch as the bill alleged the sole ownership of
the business and property by the appellee, and the court
found that she was only the owner of one-half, it is
strenuously insisted by the appellant that the decree is
not founded upon the issue, made by the bill and answer,
and that such issue was not whether appellee was a
partner in the firm, but whether she was the sole owner
of all the property and assets in the firm. Undoubtedly,
it would have been a more correct practice for the ap-
pellee to have amended her bill and alleged a partner-
ship, but the fact that the interest, proven by her, was
less than the amount of interest set up in the bill, fur-
nishes no ground, under the circumstances of this case,
for reversing the decree. Relief will be decreed in equity
to the extent called for by the evidence, although greater
relief is claimed in the bill. (*Vicksburg, etc. Railroad Co.* v.
*Ragsdale*, 54 Miss. 200).

In *Bogan* v. *Daughdrill*, 51 Ala. 312, it was said: "It is
a general rule at law and in equity, that a plaintiff may

be permitted to recover a part only of what he claims; that he shall not be turned out of court when the proofs fix his right of recovery, but lessen its measure from that averred in his pleading." In the case of *Bogan* v. *Daughdrill, supra,* the bill averred the existence of a contract for the sale of more than four hundred acres, while the chancellor rendered a decree enforcing it as to eighty acres only, and it was held that, if the proofs entitled the complainant to eighty acres only, such discrepancy between the pleading and the proof as to the subject matter of the sale would not be regarded as fatal to the decree.

In *Breckenridge* v. *Ostrom,* 79 Ill. 71, where it was alleged that a party had a one-half interest in a canal boat and the decree found that his interest was less than one-half, it was held that the variance was not a material one. In the latter case it was said: "It is objected that there was a variance between the proof and decree, and the case made by the bill, in that the bill alleges in Winton a half interest in the boat, and the decree finds a less interest. Such a variance in regard to quantity of interest is not a material one, and, besides, the proof would have justified the finding of a one-half interest."

In the case at bar, the proof would have justified the finding that appellee was the sole owner of the business and the property. This being so, she alone can complain that the court found her to be the owner of a half interest only. She has filed no cross-errors, and makes no complaint of the decree in this regard. Surely, it does not lie in the mouth of the appellant to complain that the court gave him a half interest, instead of giving to his wife the whole of the property. A party is not allowed to assign error as to a finding, which is for his benefit, and not against his interest. It has been held in an action at law that, if the jury gives the plaintiff less than he is entitled to recover upon the finding of the issues, the error is one of which the plaintiff alone can

complain; and, if he submits to the verdict, the defendant cannot be heard to insist that it shall be set aside because it is unjust to the plaintiff. (*Wolf* v. *Goodhue Fire Ins. Co.* 43 Barb. 400; *Luey* v. *Bundy,* 9 N. H. 298; *Reid* v. *Houston,* 20 Ill. App. 48).

It is urged upon the part of the appellant that the decree is erroneous in finding that the partnership between appellant and appellee was dissolved by the filing of the bill in this case on December 7, 1900. It has been held that a partnership is dissolved, unless equity can interfere, where one of the firm takes exclusive possession, and gives notice of dissolution to the others and the public. (22 Am. & Eng. Ency. of Law,—2d ed.—p. 205). Here, it is alleged in the bill, and the proof shows, that the appellant took possession of the business and property and excluded his wife from the control thereof or from a participation therein. "Any circumstance, which renders practically impossible the continuance of the partnership, or the attainment of the common end, with a view to which it was entered into, is sufficient to warrant a dissolution. * * * Where a partner so seriously misconducts himself as to render it practically impossible for his co-partners to continue to act with him, a court of equity will dissolve the partnership at the instance of a co-partner." (Ibid. pp. 209, 210). Among the acts and circumstances, which had been deemed sufficient to justify a decree of dissolution, are the following: "Excluding a partner from any voice in the management of the business, and disregard of his advice and wishes; irreconcilable differences and personal ill-will between the partners, rendering co-operation in the business impossible; refusal to keep accounts open to the co-partners, to account at reasonable times, and to pay over profits as agreed." (Ibid. p. 210). The proof in the present case shows the existence of such acts and circumstances, as are thus stated to be sufficient grounds of dissolution. We find, therefore, no error in the decree in this regard.

After a careful examination of the record and a thoughtful consideration of all the points and objections made by the appellant, we have reached the conclusion that the ends of justice will not be subserved by reversing the decree rendered by the circuit court.

Accordingly, the judgment of the Appellate Court, affirming that decree, is affirmed.

*Judgment affirmed.*