### Thomas B. Jones, Plaintiff in Error, v. William Bates, Defendant in Error.

1. ASSUMPSIT—*preponderance of evidence.* In assumpsit for government levee work, alleged to have been performed at the request of defendant, because of his liability as bondsman for another contractor, who failed to perform such work under his contract, where such bondsman has collected the estimates, *held,* that the evidence and circumstances corroborate plaintiff's claim and justify a verdict and judgment in his favor.

2. ASSUMPSIT—*verdict for less than amount shown due.* In assumpsit for work performed under an alleged agreement which would have entitled plaintiff to judgment for $3,553.55, where a verdict is rendered for $1,543.65, and there is no dispute, except as to the whole of the claim, the defendant cannot contend that the verdict is absurd and for less than shown to be due, the plaintiff alone being entitled to complain of such insufficiency.

Error to the Circuit Court of Massac county; the Hon. A. W. LEWIS, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed March 10, 1913.

COURTNEY, HELM & HELM, for plaintiff in error; THOMAS M. SCRUGGS, of counsel.

H. A. EVANS and C. L. V. MULKEY, for defendant in error.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action of *assumpsit,* brought by de-

fendant in error, William Bates, against plaintiff in error, Thomas B. Jones, to recover a sum of money which defendant in error claims is due him for work and labor, done by him for the plaintiff in error, at his request.

The declaration contains only the common counts. A trial by the court and jury resulted in a verdict and judgment for the plaintiff for $1,543.65, and the defendant Jones prosecutes this writ of error.

The only question presented for consideration here is the sufficiency of the evidence to support the verdict and judgment, plaintiff in error urging no other reason and relying on no other error. A close examination of the whole record of the evidence in this case was therefore required and given by this court. The evidence on material points was conflicting and beyond reconciliation. Carefully considered, however, we find the following facts to have been fairly well established by the evidence. A corporation called the Talley-Bates Construction Company entered into a contract with the United States government, to do certain levee repair work on the lower Mississippi river, and to secure the faithful performance of that contract said corporation executed a bond in favor of the government which is signed by the plaintiff in error, Thomas B. Jones, and one H. T. Bruce, as sureties.

Before the levee work mentioned in the contract was completed by the said construction company the work for some reason was abandoned and the government advertised and relet the contract for the completion of the work. At this reletting, one Henry F. Watkins was the successful bidder for a portion of the work, and the defendant in error William Bates, for another portion. The contract thus secured by Watkins, covered two distinct pieces of work which have been referred to in the evidence as the Williams work and the Sessions work. The Williams work extended from section 26 over 11, to section 28 over 4, and comprised in the neighborhood of 50,000 cubic yards of earth

work excavation and filling. For this work the contractor was to receive 15¢ per cubic yard. The Sessions work ran from station 28 over 47 to 29 over 16 and comprised approximately 30,300 cubic yards, for which work he was to receive 19¢ per cubic yard. The technical words and figures "28 over 47" means 47 stations beyond 28 miles from the mouth of White river, and the technical words and figures "29 over 16" mean 16 stations (each station being 100 feet, or 1,600 feet) beyond 29 miles from the mouth of said river. It appears therefore, that the portion of the levee known as the Sessions work was 2,180 feet long.

The plaintiff in error, Thomas B. Jones and one H. T. Bruce were bondsmen for said Watkins, as surety to the government for the performance of the Watkins contract. The government at the same time it made the contract with said Watkins also made a contract with the defendant in error William Bates, for a portion of the work. The Bates contract covered stations 29 over 48 to 30 over 16; that work being 2,080 feet in length. The section of the work covered by the Bates contract was only a short distance from the work covered by the Watkins contract, known as the Sessions work. Bates was to receive 19¢ per cubic yard for the work, and he, like Watkins, was required to give bond to the government for the faithful performance of the work. Bates at once commenced the work under his contract and fully completed it to the satisfaction of the government, on or about the 26th day of October, 1907, and was paid for it by the government.

It appears from the evidence that Watkins did nothing under his contract prior to October 1, 1907, and that he accomplished but little during that month. It further appears from the evidence that the government engineer in charge of the work on behalf of the United States was one Captain Connor. That Captain Connor had evidently lost faith in the ability of Watkins to carry out his agreement with the government and late in the month of October he engaged the

defendant Bates to bring his outfit and men over the Sessions work and agreed to pay Bates all the cost of the work he would do and 15% above that cost. Under this arrangement Bates moved on to the Sessions work and worked 4 or 5 days, at the end of which time the arrangement was terminated by Captain Connors. The evidence also shows that while Bates' outfit was still on the Sessions section of work Watkins went to him and delivered a letter which is as follows:.

"MEMPHIS, TENN., October 31, 1907.

MR. WILLIAM BATES,

    Memphis, Tenn.

DEAR SIR:

I have just received an order from H. F. Watkins to pay you for your outfit at the rate of $750 per month for levee work in the White River District and this order will be honored and will be paid from H. F. Watkins estimate for the proper months.

Yours truly,

WM. D. CONNOR,

Capt. Corps or Civil Engineer.

The above for rent of mules, tools and camp outfit. I agree to furnish all labor for same and feed for mules.

H. F. WATKINS."

It further appears that on the receipt of the letter of Captain Connor followed by the statement or proposition of Watkins that Bates accepted the proposition and with his men entered upon the work. After Bates had been working under this arrangement a few days he discovered that Watkins' promise in regard to the feed and pay roll were not and would not be carried out and shortly thereafter Bates went to Memphis to see the plaintiff in error Jones who was bondsman for Watkins in order to make some definite arrangement by which he could get the compensation provided for under the Watkins' proposition or contract.

Jones as bondsman for Watkins was being pressed

by Captain Connor to see that the work under the Watkins contract was done and had been receiving letters from Captain Connor complaining that Watkins was not carrying out his contract with the government. The evidence further shows that Bates showed Jones the Connor letter with the Watkins' supplement and was complaining because Watkins was not furnishing him the feed and supplies in accordance with the proposition in the letter and that he (Bates) did not intend to go on with the work. This was about the 6th of November, 1907. The foregoing state the condition of affairs as they existed up to that date.

Immediately afterwards the contract sued on in this case is claimed by Bates to have been made. Bates testified that he had made up his mind to quit the work under the Watkins' proposition and he told Jones of his intention. He also testified that Jones requested him to go on with the work and that he (Jones) would pay him 19¢ per cubic yard for all the work that he would do if he would continue. Bates further testified that Jones told him that he was in a position to collect all of Watkins' estimates, and that if he (Bates) pulled his teams off the work it would leave him in a bad shape, and that he wanted Bates to work for him and not for Watkins or Connor. Defendant in error testified that his father William M. Bates was present when the contract was made and that his father said to him at the time, "Mr. Jones is making you a fair proposition; I think you ought to go ahead and help finish up the work and stay as long as you can off your contract." That the contract referred to by William M. Bates was one that the defendant in error had with the government in another state. Defendant in error, Bates, states that in the presence of his father he accepted the Jones proposition and he went to work on the Sessions section of the Watkins' contract, and notified Captain Connor that he would no longer work under the arrangement set forth in Connor's letter of October 31, 1907.

This statement as to the contract is corroborated in full and particularly by William M. Bates, father of defendant in error. It is denied however by the plaintiff in error Jones. He admits telling or asking Bates to go ahead with the work but he explains that request by saying, that he told him to go ahead with the work because he (Bates) was under obligation to see that Watkins' contract was completely performed by reason of the fact that he (Bates) had signed the bond which Watkins had given to Jones for the faithful execution of the contract.

It is not denied that the defendant in error performed the work, and that the number of cubic yards of the work done by him at 19¢ per cubic yard would amount to $3,553.55. It nowhere appears in the evidence that the defendant in error, Bates, was ever paid for this work either by Watkins, Jones or anyone else. The evidence also shows that Jones obtained from the government all that was paid on the Watkins' estimates which included the work done by Bates.

Defendant in error, Bates, is corroborated in his claim that he had a contract with Jones to do this work not only by his father, William M. Bates, but by other facts and circumstances in the case.

It was for the jury to say, after hearing the whole of the evidence where the truth of the matter lay and by their verdict they have said that the preponderance of the evidence was in favor of the plaintiff in the case, and unless this court can say that such verdict was unjust and manifestly against the weight of the evidence an affirmance of the verdict and judgment should follow.

Plaintiff in error contends that in view of the fact that judgment was for a much less amount than was claimed by plaintiff when there was no dispute except as to the whole of the claim, and contends that if the jury allowed any they should have allowed the whole, and contends that the verdict is absurd and must have been rendered by mistake.

This contention cannot prevail under the well established rule of law that the defendant cannot be heard to object because the amount allowed plaintiff was less than the evidence showed was due him. The plaintiff alone in such case is entitled to complain of the smallness of the verdict. Heyman v. Heyman, 210 Ill. 524; Reid v. Houston, 20 Ill. App. 48; Starks v. Schlensky, 128 Ill. App. 1.

After full consideration of all the evidence in this case this court cannot say the verdict was manifestly against the weight of the evidence.

In fact the evidence would have supported a verdict for a larger amount.

The trial court committed no error in overruling the motion for new trial and entering judgment on the verdict and this judgment is accordingly affirmed.

*Affirmed.*