JOHN H. PETERSON, Plaintiff-Appellee, *v.* DOUGLAS R. PRINCE, Defendant-Appellant.

Third District No. 81-229

Opinion filed December 22, 1981.—Rehearing denied January 18, 1982.

John S. Noble, James D. Skaar, and Charles J. Myler, all of Ruddy, Myler, Ruddy & Fabian, of Aurora, for appellant.

Michael S. Guilfoyle, of Mendota, for appellee.

JUSTICE ALLOY delivered the opinion of the court:

Plaintiff John Peterson brought the instant action against defendant Douglas Prince for an accounting between the two based upon the existence of an alleged partnership. The partnership allegedly entered into by them involved the raising of cattle. Defendant Prince admitted a partnership with respect to one herd of cattle, that existing at the time the parties formed the partnership in 1975. However, Prince denied that a second herd of cattle, the Pinzgauer cattle, were owned in partnership with Peterson. The Pinzgauer herd was purchased in the late spring of 1976. The trial court heard the evidence, much of which was contradictory, and found that a partnership existed with respect to both herds of cattle. After so concluding, by order of March 31, 1980, the court gave each party 90 days in which to submit a written accounting for the partnership, and an additional 90 days in which to file objections and respond to the other party's accounting. On July 1, 1980, Peterson submitted his written accounting with supporting documentation. The defense submitted nothing, neither accounting nor objections. Then, on October 7, 1980, a hearing was set on the accounting question, the hearing

to be held on December 29, 1980. Notice was given to both parties. Defendant submitted nothing prior to the hearing.

On December 29, 1980, the date set for hearing, neither defendant nor defense counsel was present at the hearing. The court proceeded without them, hearing plaintiff Peterson's testimony and evidence with respect to the partnership expenses incurred by him and concerning the value of the Pinzgauer cattle when the partnership ended. Based upon the evidence produced at the hearing, the court entered judgment for Peterson in the amount of $47,607.21, plus interest and costs of suit. Thereafter, on the same date, a motion to vacate the judgment was filed by defendant Prince's counsel, in which he alleged that he was tied up in another court on legal business at the time of the hearing. A hearing on the defense motion to vacate was held the following day, December 30, 1980. At the hearing, the court heard defense counsel's excuses for his failure to appear. The substance of his argument was that he was engaged in the courthouse, in a separate courtroom, on other matters the previous day. While acknowledging that counsel may have had other business that day, the court emphasized to him the problems with the case. The court therein noted that the defendant was not present for the hearing, and, more significantly, that no accounting had been filed by the defense, despite three months time in which to file such accounting. The court inquired of defense counsel what defense counsel could have done, in light of the absence of the defendant and the lack of an accounting from him. Defense counsel stated that he could have cross-examined the plaintiff Peterson, and that he may have been able to show that his accounting was not complete and fair. On the question of the defendant's absence and his failure to submit an accounting, the defense counsel stated:

> "I would also like to state for the record that we have contacted our client, Dr. Prince, on numerous occasions with respect to the accounting; almost on a weekly basis repeatedly asking him to do this accounting. Telling him that there was this time limit imposed by the court. We even contacted him frequently after the time period had elapsed and we did not receive the accounting until actually just a short time ago."

The court was understandably upset with defendant and defense counsel. Almost nine months had passed since the court's order finding the existence of the partnership. Five months had passed since the time limit set for submitting an accounting, yet nothing had been submitted by the defendant. Notice of the December hearing had been given to the defense in early October, two months in advance of the hearing. Yet defendant did not appear, nor was an accounting filed or objections to the plaintiff's accounting. Nevertheless, despite the history of the defendant's

disrespect for the court's scheduling, the court agreed to allow defense counsel to participate in the accounting hearing. At the conclusion of the December 30 hearing on the motion to vacate, the trial court, with plaintiff counsel's acquiescence, agreed to vacate the judgment, providing that a new hearing on the accounting be held three days hence, on January 2, 1981. No objection was made by defense counsel. Plaintiff's counsel agreed to have the plaintiff appear for a second time, in order to testify to the accounting, so as to permit cross-examination by defense counsel.

Three days later, on January 2, 1981, when the case was again called for a hearing on the accounting question, defense counsel requested a continuance, due to the continued absence of Dr. Prince. The defendant Prince had not returned from a trip to Canada and was thereby unavailable for testimony. The trial court, noting the complete lack of diligence on the part of the defendant from the end of the trial nine months previously, and also noting the imposition upon the plaintiff of having to be ready for hearing three times, denied the request for continuance. With that ruling, defense counsel made an oral motion to permit the defendant to testify at the conclusion of plaintiff's case. The court indicated that it would permit the defendant Prince to testify, if he were present in court *that day* to testify. The court indicated that he would not permit the defendant to testify upon his return from Canada at some future time. He denied the motion, quite properly viewing it as merely another attempt to get a continuance. After these procedural hagglings, plaintiff Peterson again took the stand, testified to the expenses and profits, with supporting evidence. Defense counsel made no attempt to attack or challenge Peterson's testimony with regard to the accounting. He asked one question of the plaintiff, that being what the total amount claimed was. He made no argument to the court concerning the plaintiff's testimony at the accounting, and in no way disputed or challenged the conclusions of the plaintiff as to the amount of the accounting. Thereupon, the court entered judgment for the plaintiff Peterson, based upon the uncontradicted and unchallenged evidence at the hearing, in the amount of $47,607.21, plus interest and costs.

Within 30 days of that judgment order, defense counsel filed another motion to vacate the judgment. A hearing was held on that motion, the basic thrust of which was that the defendant was not allowed to testify. The motion was denied.

From the denial of his motion and from the judgment issued, the defendant then prosecuted the instant appeal. He argues that the court erred in concluding that a partnership existed with respect to the Pinzgauer cattle. Furthermore, he argues that the court abused its discretion in denying the defendant's second motion to vacate. In support

thereof, the defense now contends that the judgment entered was contrary to the evidence and contrary to substantial justice between the parties.

■■ ■ The first issue is whether the court's finding that a partnership existed is contrary to the manifest weight of the evidence and must be reversed. It is established that the existence of a partnership is normally a question of fact for the fact-finder, and its decision will not be disturbed unless manifestly against the weight of the evidence. (*Koestner v. Wease & Koestner Jewelers, Inc.* (1978), 63 Ill. App. 3d 1047, 381 N.E.2d 11.) The exixtence of a partnership must be clearly shown, but that question is one of the intention of the parties, to be gathered from an examination of the facts and circumstances of their dealings. In the instant case, we have carefully scrutinized the evidence in the record and find that the court's determination that a partnership existed with respect to the Pinzgauer cattle is supported therein. It is not necessary to go at length into that evidence, much of which was contradictory. We made note that it is undisputed that they had a partnership in 1975 with respect to the stock cattle. Prince owned the farm the cattle were kept on while Peterson took care of the cattle. It was also established that the Pinzgauer cattle were purchased in the late spring of 1976 from Prince's brother. Both men went to Tennessee to look over some Pinzgauer cattle. Both men were present during discussions with Prince's brother concerning the purchase of the Pinzgauers. Additionally, both men signed a promissory note to obtain a loan to cover the purchase price of the cattle. Part of the loan was used to pay off the existing partnership debt, while the other part of the loan went into a joint checking account. From this account the purchase price of the Pinzgauer cattle was paid and expense checks were written by both Peterson and Prince. Additionally, the previously owned partnership cattle were part of the collateral for the new loan, and when those cattle were subsequently sold, the proceeds from the sale went into the joint checking account on the Pinzgauer cattle. Aside from this evidence, supported by documentation, there was Peterson's own testimony that he and Prince agreed to buy the Pinzgauer cattle in partnership, with profits and expenses to be split 50/50. The plaintiff agreed to take care of the cattle while the defendant Prince supplied the farm. There was also testimony from several witnesses who indicated that Prince had informed them that he and Peterson had a partnership on the Pinzgauer cattle. It is true, however, that Prince denied such statements and denied any partnership was intended. He also offered evidence to indicate that he spent his own money to pay some expenses and also to reimburse Peterson for some expenses. It was also established that the cattle were registered in his name only.

■■ What is clear from the evidence on the question of the existence of

the partnership is that credibility questions and contradictory evidence abounded. As has been repeatedly noted, in such cases the trial court is in the superior position to make determinations on the evidence. Only where his resolution of the questions is manifestly against the weight of the evidence will a reviewing court overturn his findings. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624.) In the instant case, we find no sufficient basis to overturn the court's finding that the parties intended to create a partnership with respect to the ownership of the Pinzgauer cattle.

■■ The defense now seeks also to reverse the judgment award of $47,607.21, which was entered by the trial court based upon the evidence presented at the hearing on the accounting. We do not disturb that judgment. It is fully consistent with the evidence produced at the hearing, and while certain trial evidence was arguably contradictory to the evidence presented by plaintiff, such evidence was not produced or argued at the hearing on the accounting, the purpose of which was to fix the award as to the accounting between the partners. Neither did defense counsel, at the hearing, challenge, question, or impeach plaintiff's evidence as to the accounting. No argument was made that the evidence was incomplete, fraudulent, or inconsistent with other evidence produced at trial. Having completely failed to object or raise any argument with respect to the correctness of plaintiff's accounting at the trial hearings, the defense contentions on appeal have been waived. Defense counsel was given a chance to attack and challenge the plaintiff's evidence, but his cross-examination showed no error in that evidence.

Even if there existed some inconsistency between the trial evidence and the evidence produced by the plaintiff at the hearing for accounting, we find no basis in the record for a reversal of the judgment award and a rehearing, so that the defendant would be permitted to present his own accounting evidence or do a better job of challenging the plaintiff's evidence. Justice does not require such a result. *Plantaric v. Michaels* (1981), 98 Ill. App. 3d 154, 424 N.E.2d 64; *People ex rel. Reid v. Adkins* (1971), 48 Ill. 2d 402, 270 N.E.2d 841; *Francone v. Weigel Broadcasting Co.* (1979), 79 Ill. App. 3d 991, 398 N.E.2d 1114.

■■ In this case, the defendant and his counsel's total lack of diligence with respect to the accounting is amply shown in the record. There is no need to repeat the facts again, as they have been set forth previously in the opinion. Despite repeated efforts by the court, opposing counsel, and even his own counsel, the defendant Prince did not see fit to produce any accounting for a period of 10 months. Nor did he see fit to appear at the scheduled hearing, despite lengthy prior notice. When the court and opposing counsel graciously permitted the judgment to be vacated, defendant did not appear for the subsequently scheduled hearing. Fur-

thermore, at the second accounting hearing, on January 2, 1981, defense counsel was present, and he was permitted to cross-examine the plaintiff as to his evidence. That he perfunctorily performed that examination, or that he failed to dispute or challenge the evidence in any way, is not the fault of plaintiff or the court. It must be emphasized that this was not a default judgment or a judgment arising from an *ex parte* hearing.

Plaintiff has fully complied with all court orders and scheduling and has been more than considerate in attempting to give the defendant his day in court in which to contest the judgment award. We find no abuse of discretion in the trial court's action.

For the reasons stated in this opinion, the decision of the Circuit Court of La Salle County is affirmed.

Affirmed.

SCOTT, P. J., and HEIPLE, J., concur.

ADDENDUM TO OPINION IN CASE NO. 81-229:

It should be especially noted that counsel on appeal, Ruddy, Myler, Ruddy & Fabian (Charles J. Myler and John S. Noble) were counsel for appellant solely on appeal and were not involved in any manner with the handling of the foregoing case in the trial court in connection with any of the procedures or matters referred to in the opinion with respect to procedures in the trial court and were not being referred to in the opinion with respect to any such procedures in the trial court.