**In re Theodore R. SEABLOOM,
Elizabeth A. Seabloom,
Debtors.**

**Bankruptcy No. 86–83159.**

United States Bankruptcy Court,
C.D. Illinois.

Oct. 16, 1987.

John G. Ames, Orion, Ill., for debtors.

Ray E. Burger, Galesburg, Ill., trustee.

DECISION AND ORDER

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

This matter is before the Court on the Trustee's Objection to confirmation of the Debtors' Chapter 12 plan.

Theodore R. Seabloom and Elizabeth A. Seabloom filed a voluntary petition for relief under Chapter 12 of the Bankruptcy

Code on December 31, 1986. In their petition, the Seablooms allege that they have been legal partners in the farming operation at least since 1975. The Trustee filed an objection to the confirmation of the plan, contending that the Seablooms are not a partnership. The Trustee also contends that the Debtors do not qualify as a family farmer under Chapter 12 which is defined as an

"individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed."

11 U.S.C. Section 101(17)(A).

■ The Seablooms contend that they are partners, pointing to their joint liability on the farm debts as well as their sharing of the profits and losses of the farm. Certainly there is no prohibition against the formation of a partnership between a husband and a wife. The existence of a partnership, however, must be clearly shown. *Peterson v. Prince*, 102 Ill.App.3d 220, 58 Ill.Dec. 355, 430 N.E.2d 297 (3d Dist.1981). In *Peck v. Peck*, 16 Ill.2d 268, 157 N.E.2d 249 (1959), the Illinois Supreme Court rejected the wife's contention of a partnership with her former husband, stating:

"It is the settled law of this State that, as between the parties, the existence of a partnerhip relation is a question of intention to be gathered from all the facts and circumstances. Written articles of agreement are not necessary, for a partnership may exist under a verbal agree-

ment, and circumstances may be sufficient to establish such an agreement. The requisites of a partnership are that the parties must have joined together to carry on a trade or venture for their common benefit, each contributing property or services, and having a community of interest in the profits. Relying principally upon *Heyman v. Heyman*, 210 Ill. 524, 71 N.E. 591 [1904], and *Kurtz v. Kurtz*, 10 Ill.App.2d 310, 134 N.E.2d 609 [1956], wherein the existence of partnerships between husband and wife were implied from the facts and circumstances, appellant contends the chancellor erred when he found that no partnership existed in this case. We do not find, however, that the circumstances here are as persuasive or compelling as those in the authorities relied upon. In the *Kurtz* case the proof showed not only that the wife had contributed 60 per cent of the initial capital for the business, but also that a decree divorcing the parties had set forth a property settlement agreement wherein the husband agreed that she was to have a one-half interest in the business he operated. In the *Heyman* case, wherein both the husband and wife claimed to be the sole proprietors of the business, a partnership was implied from proof which showed the wife had furnished capital, that both devoted equal time to the business, that the husband held his wife out as his partner, that the business was conducted under the name of 'S. Heyman & Co.' and that, although the dominant management of the business was in the husband, segments of the business had in fact been conducted solely in the wife's name from time to time prior to the divorce. Here the [husband] and his brothers started operating the restaurant in 1946, and on January 1, 1949, approximately 15 months before his marriage to appellant, the [husband] acquired his brothers' interests and became the sole proprietor. Thereafter, during the period of his marriage to appellant, the operation of the business was generally in the name of the appellee alone. No personal funds of the appellant went into the acquisition or estab-

lishment of the business and there is no proof that she was ever held out as a partner or part owner, it appearing that her duties were much the same as they were prior to the marriage. It is true that appellant worked increased hours and that the gross value of the business increased after the marriage, but there is no evidence that this increase was the result of any unusual services performed by appellant. On the other hand, the record shows that the restaurant was improved in 1954 and 1955 at a cost of $30,000 raised by a mortgage and that, from 1948 to 1956 [the husband] had borrowed sums totalling $19,000 which went into the restaurant and for which he was personally liable."

The record in the present case is devoid of any objective indicia of a partnership. Mr. Seabloom conceded that no partnership tax returns had ever been filed. There was no evidence that Mr. and Mrs. Seabloom held themselves out to others as a partnership. Mr. Seabloom testified that his wife would "help out from time to time and take care of things when he was gone." He also stated that she would occasionally help out in the fields and would run errands for him. This Court finds that there was no partnership between the Seablooms. The conclusion drawn by the court in *Olson v. Olson,* 66 Ill.App.2d 227, 213 N.E.2d 95 (2d Dist.1965), is equally applicable here.

"The plaintiff and defendant, as husband, and wife and parent, were engaged in the joint venture of supporting, rearing and educating a family. The funds for this purpose, part of which were kept in a common account, were derived from farming, cattle raising, and the personal endeavors of both plaintiff and defendant aside from their farm efforts. However, special agreements or arrangements, for particular joint undertakings and adventures, do not constitute a partnership."

The Seablooms contend that if this Court determines that they are not a partnership, they qualify as family farmers under Section 101(17)(A) of the Bankruptcy Code because more than 50% of their 1985 gross income was received from their farming operation.

The parties agree that the following items of income were not received from the farming operation:[1]

| Wages | $17,331.28 |
|---|---|
| Interest | 26.06 |
| Dividends | 1,105.00 |
| Sale of stock | 7,009.95 |
| Flea Market | 374.00 |
| Total | $25,846.29 |

The parties also agree that the following items of income were received from the farming operation:

| Schedule F | $16,085.00 |
|---|---|
| Sale of Sows | 4,153.00 |
| Total | $20,238.00 |

The classification of the following items is disputed:

| Farm Rental Income | $18,485.00 |
|---|---|
| Sale of Machinery | 10,601.00 |
| Total | $29,086.00 |
| | |
| TOTAL GROSS INCOME | $75,170.29 |

Accordingly, in order to qualify as family farmers the Seablooms must have received at least $37,585.16 from their farming operation in 1985. Even if the proceeds from the sale of the machinery were added to the farm income of $20,238.00 as listed above, the Seablooms would not meet that requirement. Thus, the critical item at issue here is the farm rental income.

In the context of the filing of an involuntary petition,[2] the court in *Matter of Armstrong,* 812 F.2d 1024 (7th Cir.1987), held that the rental income received by the debt-

---

**1.** Both the Trustee and the Debtors attempt to make the most of their positions by utilizing the "gross" amount received where beneficial while using a lesser amount, such as the "gain" to be reported, where that would assist them in their mathematical calculations. This Court, in *In re Dean Etheridge,* 68 B.R. 235 (1986), rejected such a practice and held that figures for gross income should be used consistently. In that case, this Court noted that "[i]n the context of a taxing statute, 'gross income' normally means 'total receipts without deducting expenditures for any purpose.'" The same principle applies here.

**2.** Section 303(a) of the Bankruptcy Code prohibits the filing of an involuntary petition against a farmer.

or was not derived from his farming operation. The debtor had received the rent money from the tenant "in cash and up front." The court said:

"This is not a risk-laden venture in the nature of farming. It cannot be considered part of Armstrong's personal farming operation. Armstrong argues he actively participated in the tillage of the crops on Hanlon's acreage and provided fertilizer for that acreage. However, he admits he was not required to do so under the written lease arrangement with Hanlon. His help to Hanlon served to keep an eye on Hanlon, 1981 being the first year of what could more accurately be described as a landlord-tenant relationship.

In the arrangement described above, Armstrong is not exposed to '... the irregular nature and the potential ups and downs ...' which '... would require a different test for an involuntary petition against a farmer ...' See H.R. Doc. No. 93–137, 93d Cong., 1st Sess., pt. I at 224 (1973)."

812 F.2d at 1027–28. Cases decided under Section 303(a) may properly be relied upon in determining whether a debtor is a family farmer under Chapter 12 of the Bankruptcy Code. *In re McKillips*, 72 B.R. 565 (Bkrtcy.N.D.Ill.1987).

The Seablooms argue that *Armstrong* is distinguishable because they have a more "conventional" cash-rent lease, presumably with a portion of the rent paid after the crops have been harvested and sold. This Court disagrees. In *In re Mary Freese Farms, Inc.*, 73 B.R. 508 (Bkrtcy.N.D.Iowa 1987), the bankruptcy court held that a cash rent farmer did not qualify as a family farmer, reasoning:

"The situation in this case is almost identical to the arrangement in *Armstrong*. While MFF does not receive all of its rent 'up front,' it is paid in semi-annual installments. If bad weather or poor management reduce or eliminate the tenants' yield, the rent is nevertheless absolutely due and payable on the date set by the parties according to the lease agreement. This is not a cropshare lease situation, where, for example, a farmer-lessor works out an arrangement with a farmer-lessee to pay a certain percentage of the input expenses in exchange for the same percentage of the resultant crop. Under the cropshare agreement, each farmer receives the set percentage of the crop that is ultimately harvested. Although the farmer does not actually work the ground, he assumes the risk of a poor or nonexistent crop and accordingly, the risk that he will be paid substantially less than originally anticipated. The risk inherent in a farming operation is shared by the landlord and tenant according to the percentages set by the cropshare lease.

In contrast, in terms of risk a farm that is cash rented is basically no different from any other debtor-creditor or landlord-tenant relationship. If the tenant farmer fails to pay the rent when due, the landlord has a statutory lien on all of the crops grown on the rented ground. He may also have taken a consensual security interest. Even if there is a total crop failure, the tenant is personally liable to the landlord for the amount of the rent owed. The landlord of a residential apartment building has similar options should a tenant fail to fulfill his lease obligations. The landlord may proceed according to state law to evict the tenant and recover damages against the tenant personally."

The Seablooms, asserting that they wish to remain in farming, argue that it would be grossly unfair to deny them the relief afforded by Chapter 12 merely because they have been forced due to economical difficulties to rent their farmland during the past two years. The *Armstrong* court, in commenting upon the dissenting opinion which advocated an inquiry into the debtor's financial predicament, noted the difficulty in accurately assessing a debtor's future intent. As the majority speculated, most farmers would, albeit sincerely, assure the bankruptcy court that they intended to farm the land in the future, despite the likelihood that they may never be able to do so. While characterizing the position

taken by the dissent as a noble one, the majority rejected such an approach.

Moreover, this Court rejects the Seablooms' position that the test set forth in Section 101(17)(A) is not absolute. It is.

For the foregoing reasons, IT IS ORDERED that the Trustee's objection to the confirmation is SUSTAINED; that confirmation be and the same is hereby DENIED; and that the Seablooms' Chapter 12 case is DISMISSED.