**In re Ardrith BARNETT, Debtor.**

**Bankruptcy No. 93–50352–ABF.**

United States Bankruptcy Court,
W.D. Missouri.

Dec. 14, 1993.

**536**

Joel Pelofsky, Shughart, Thomson & Kilroy, Kansas City, MO, for debtor.

Robert B. Miner, Utz, Litvak, Summers, Powers & Manring, St. Joseph, MO, for Citizen's Bank & Trust.

Richard V. Fink, Kansas City, MO, for Chapter 12 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARTHUR B. FEDERMAN, Bankruptcy Judge.

#### A. *Introduction*

This is a Chapter 12 case. Pending is confirmation of debtor's Plan, and the Objections to Confirmation filed by the Chapter 12 trustee and Citizen's Bank & Trust Co. ("Citizen's") In addition, Citizen's has filed a Motion for Relief from the Automatic Stay. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L) over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b)(1). For the reasons set forth below, I order confirmation of debtor's proposed plan and deny the motion for relief from the automatic stay.

#### B. *Findings*

1. Debtor owns approximately 256.6 acres of real estate located in Livingston County, Missouri.

2. Citizen's holds three promissory notes, each secured by a deed of trust on such real estate. The balance on the first note, dated June 29, 1979, is $73,142.34. The balance on the second note, dated September 25, 1991, is $16,050.93. The balance on the third note, dated October 25, 1991, is $12,165.05. The total due as of November 19, 1993, with attorneys fees of $5,853.84, is $110,868.66.

3. Such obligations are secured by real estate with a value of $110,000 and a trailer with a value of $1,200.

4. Debtor, who is forty-seven years old, has lived on her farm for approximately twenty-seven years. She was divorced in 1989. For ten years prior to 1991, she was employed by the Missouri Department of Corrections. From the time she left the Department of Corrections until the filing of this case, she was unemployed. In 1992, the farm produced gross income of $13,691.00, of which $5,442.00 was from the sale of farm equipment and other personal property, and $1,540.00 was from custom work done for other farmers. That same year, she also received unemployment compensation of $8,050.00.

5. At the Court's urging, debtor obtained off-farm employment prior to the Confirmation Hearing. She now holds two jobs, and anticipates off-farm income of approximately $20,000 per year from such jobs.

6. Debtor's plan, as orally amended at the confirmation hearing, provides for Citizen's claims to be amortized over 20 years, at an interest rate of nine percent. Yearly payments are due on January 1 of each year beginning in 1995, with a default date of January 31. The obligation will balloon on July 1, 2008, which is the same date the balance of the first note was to be paid in full per its original terms. Debtor also proposes to pay $250.00 per month, on the first of each month, commencing January 1, 1994, such monthly payments to be applied to reduce the yearly payment due on January 1 of the following year. Debtor's plan, as modified, also provides that if any payment due Citi-

zen's is not made when due or, as to the yearly payment only, prior to the default date, Citizen's shall have the right to an Order lifting the automatic stay to exercise any and all rights available to it under Missouri law.

7. Debtor contends that her plan is confirmable based upon the income from her two jobs and her projected farm earnings. She projects 1994 income and expenses as follows:

| Income | | Expenses | |
|---|---|---|---|
| CRP | $ 1,378.00 | Taxes | $ 720.00 |
| Wood Sales | 3,000.00 | Citizen's | 11,600.00 |
| Mowing | 1,600.00 | FmHA | 230.00 |
| Hay Sales | 4,000.00 | Household | 5,000.00 |
| Cattle Sales | 5,000.00 | Utilities | 1,200.00 |
| Child Support | 2,400.00 | Insurance | 400.00 |
| Wages | 20,000.00 | Calves | 3,500.00 |
| Tax Refund | 500.00 | Income Tax & Social Security | 6,000.00 |
| TOTAL | $38,878.00 | Equipment, | 1,500.00 |
| | | Feed, Seed, & Fertilizer | 1,500.00 |
| | | Trustee's fees | 1,232.00 |
| | | Cost of Admin. | 2,000.00 |
| | | TOTAL | $34,882.00 |

8. A confirmation hearing was held on November 19, 1993. Citizen's and the trustee contended at the hearing that the plan is not feasible. Citizen's also contended that the debtor is not eligible for Chapter 12 relief. No other objections were raised at the hearing.

9. The Code provides that "[o]nly a family farmer with regular income may be a debtor under Chapter 12." 11 U.S.C. § 109(f). In order for an individual to qualify as a "family farmer" she must have, among other things, received more than fifty percent of her gross income in the prior year from her farming operation. 11 U.S.C. § 101(18)(A). Schedule F, filed with debtor's 1992 tax returns, shows gross income from farming of $13,691.00 and income from other sources of $8,050.00. Included in farm income is $5,442.00 from the sale of farm equipment and other farm-related property and $1,540.00 from custom-hire farm work. Only if both of those items were excluded from farm income would debtor not qualify as a family farmer pursuant to 11 U.S.C. 101(18)(A). I find, however, that both such items do constitute farm income for these purposes. See, e.g. In re Armstrong, 812 F.2d 1024, 1027 (7th Cir.1987); In re Creviston, 157 B.R. 380 (Bankr.S.D.Ohio 1993).

In so deciding, I consider the extent to which the income in question bears some relation to debtor's farming activity. In re Easton, 883 F.2d 630, 633 (8th Cir.1989). The income from both questioned items was available for use in the farming operation, and was reflected as farm income for tax purposes. There is no evidence that such income arose other than out of the farming operation, or was used for any purpose other than the farming operation. Therefore, I find that the debtor is eligible for Chapter 12.

10. Section 1225(a) imposes the following requirements for confirmation of a Chapter 12 plan:

§ 1225. Confirmation of Plan.

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan ...

11 U.S.C. § 1225(a).

■ 12. As to 11 U.S.C. § 1225(a)(6), the feasibility test, I find that the requirement of that subsection is met.

The bank and trustee raised four basic issues concerning feasibility. First, debtor assumed a $1,500.00 per year profit from a proposed cattle operation, but she may not have funds available with which to purchase any cattle. Second, debtor assumes an increase of $1,000.00 per year from the sale of timber which is present on a portion of her real estate. Third, debtor assumes an increase of $1,800.00 per year on the sale of hay, over the total received in 1992. Even if the bank and trustee are correct as to these three items, they total $4,300. As shown, the plan projects income which is $3,996.00 more than anticipated expenses. Certainly it is reasonable to conclude that at least $304.00 of the increase projected by debtor is attainable. Therefore, these factors alone do not demonstrate that the plan is not feasible.

■ A more significant issue as to feasibility concerns whether the debtor will be able to generate $20,000.00 per year from her off-farm income. That projection assumes the debtor will continue to work two jobs, in addition to her farm duties. There certainly is a possibility that debtor will not be able to keep up the pace she has set for herself. However, based on the modified plan, if she falters the bank will be able to immediately exercise all rights available to it. See, In re Grogg Farms, Inc., 91 B.R. 482 (Bankr. N.D.Ind.1988). And, in the meantime, the bank will be receiving payments from the debtor. Given the protections built into the debtor's plan, and given debtor's uncontradicted testimony that she intends to continue working throughout the course of the plan in order to make payments, I find that it is reasonably probable that debtor will be able to make all payments under the plan and to comply with the plan. In re Rape, 104 B.R. 741, 747 (W.D.N.C.1989); In re Rott, 94 B.R. 163, 169 (Bankr.D.N.D.1988).

13. The plan complies with the provisions of Chapter 12 and with the other applicable provisions of Title 11.

14. Any, fee, charge, or amount required under Chapter 123 of Title 28, or by the plan, to be paid before confirmation, has been paid;

15. The plan has been proposed in good faith and not by any means forbidden by law.

16. The value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of Title 11 on such date.

17. With respect to each allowed secured claim provided for by the plan, the plan provides that the holder of such claim retain the lien securing such claim and the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim.

18. The plan provides that all the debtor's projected disposable income to be received during the course of the plan, begin-

ning on the date that the first payment is due under the plan, will be applied to make payments under the plan.

19. The collateral securing the obligation due Citizen's is necessary to an effective reorganization of the debtor. Furthermore, since debtor's plan is confirmed, cause does not exist to grant relief from the automatic stay. Therefore, the motion of Citizen's for relief from the automatic stay should be denied. 11 U.S.C. § 362(d).

20. An Order consistent with these findings will be entered this date.

Jerry W. Venters, Jefferson City, MO, for debtors.

Douglas Neeb, Kansas City, MO, for Com.

Jack E. Brown, Trustee.

Robert Lantz, Office of U.S. Trustee.