In re Ty & Sherri ROSS, Debtors.

Integra Bank, N.A., Movant,

v.

Ty & Sherri Ross, Respondents.

No. 01–41504.

United States Bankruptcy Court,
S.D. Illinois.

Dec. 7, 2001.

Rhonda S. Miller, Sturm, Smith & Parmenter, Vincennes, IN, for or Movant.

Terry Sharp, P.C., Mt. Vernon, IL, for Debtors/Respondents.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

■ Creditor, Integra Bank ("Bank"), filed a motion to dismiss the debtors' Chapter 12 case, arguing that the debtors fail to qualify as "family farmers" eligible for Chapter 12 relief. *See* 11 U.S.C. § 101(18). Specifically, the Bank asserts that income the debtors received from the sale of land in the year prior to filing constitutes non-farm income which, when added to other non-farm income of the debtors, exceeds the limitation on non-

1. The facts are undisputed.

farm income for persons seeking to file a Chapter 12 case. The debtors, in response, assert that the land sale proceeds are properly characterized as farm income and that they thus meet the 50 percent farm income test of § 101(18) for filing under Chapter 12.

Section § 109(f) of the Bankruptcy Code states that only a "family farmer with a regular annual income" may be a Chapter 12 debtor. *See* 11 U.S.C. § 109(f). Section 101(18) defines "family farmer" as an individual and spouse who, among other things,

> receive from [a] farming operation more than 50 percent of [their] gross income for the taxable year preceding [the year in which the Chapter 12 case] was filed[.]

11 U.S.C. § 101(18) (emphasis added). At issue in this case is whether, in the year prior to filing, the debtors received more than 50 percent of their gross income from a farming operation so as to come within the Code's definition of "family farmer."

Debtors Ty and Sherri Ross filed their Chapter 12 case on July 9, 2001.[1] In their petition, they schedule real estate assets consisting of a "262–acre farm" and a 24–acre "real estate development." They further disclose that in September and October 2000, they sold 18 acres of land to a golf course adjacent to their property. The debtors describe this transaction in their statement of financial affairs as a "sale of acreage from real estate development."

The debtors' tax return shows that in the year 2000, they received gross income of $19,579 from the sale of grain, cattle, and hay. (2000 Tax Rtn., Sched. F.) In addition, they received $46,169 in gross income from wages and salaries, interest income, and unemployment compensa-

tion—the bulk of it from Ty Ross's off-farm employment as a correctional officer for the Vienna Correctional Center.[2] (2000 Tax Ret., Form 1040.) In addition, the debtors received $92,996 in capital gains from the sale of 18 acres to the golf course. (2000 Tax Rtn., Sched. D.)

At hearing on the Bank's motion to dismiss, debtor Ty Ross stated that prior to his employment at the Vienna Correctional Center,[3] he farmed with his father who lives nearby. He has never been a "full time farmer," although he owns a tractor, two hay balers, and a hay conditioner and borrows any other equipment he might need from his father. He has owned the 18 acres in question for the past 12 years, during which time he has kept it in hay, except for the first two years when he planted it in corn. Ty Ross further stated that he plants 50 to 75 acres of grain every year "on the whole farm" and currently owns 15 head of cattle.

Debtors' counsel characterized the debtors' sale of land to the golf course as the "right thing" to do "to realize the highest return possible" from the land and stated that, while the debtors own additional land next to the acreage already sold, "it's a hay field and, until sold, will remain a hay field." The debtors' previous years' tax returns show that, in 1996, they sold 8.35

acres of land, and, in 1997, they sold an additional 4.5 acres of land. (1996 Tax Rtn., Sched. D; 1997 Tax Rtn., Sched. D.) In none of the past five years would the debtors have qualified for Chapter 12 relief without the inclusion of land sales proceeds as farm income.[4]

In arguing that the income from their sale of land in the year prior to filing constitutes farm income under § 101(18), the debtors rely on *In re Armstrong*, 812 F.2d 1024 (7th Cir.1987), a leading case in which the Seventh Circuit Court of Appeals ruled that income from a debtor's sale of farm machinery was farm income.[5] *Id.* at 1027. The debtors contend that, by analogy to the farm machinery proceeds in *Armstrong*, their land sale proceeds should be considered farm income because they, like the *Armstrong* debtor, sought to use their assets most effectively, making a "sound business decision" to sell the land after it appreciated in value due to a golf course being built nearby.

■ The determination of whether a debtor's sale of assets results in "income from a farming operation" for purposes of § 101(18) requires consideration not only of the nature and use of the asset involved, but also the purpose for which the asset

**2.** Ty Ross received $34,720 from his employment in 2000, while his wife received $6,684 from her work as a courthouse researcher for Shawnee Surveying and Consultant. (St. of Fin. Affs., Chp. 12 Pet., filed July 9, 2001.)

**3.** Ty Ross has held his present employment as a correctional officer since July 1983. (Sched. I, Chp. 12 Pet., filed July 9, 2001.)

**4.** In 1999, the debtors' non-farm income was $51,838 and their farm income was $37,003. (1999 Tax Rtn., Form 1040 and Sched. F.) In 1998, the debtors' non-farm income was $51,538 and their farm income was $8,984. (1998 Tax Rtn., Form 1040 and Sched. F.) In

1997, the debtors' non-farm income was $47,364, their farm income was $29,718, and they received $39,347 from the sale of 4.5 acres. (1997 Tax Rtn., Form 1040, Sched. F and Sched. D.) In 1996, the debtors' non-farm income was $42,017, their farm income was $30,076, and they received $58,247 from the sale of 8.35 acres. (1996 Tax Ret., Form 1040, Sched. F and Sched. D.)

**5.** *Armstrong*, while not decided under Chapter 12, similarly dealt with the issue of whether the debtor qualified as a "farmer" so as to be entitled to the farmer's exemption from involuntary bankruptcy found at 11 U.S.C. § 303(a). *See* 812 F.2d at 1029.

was sold.[6] In this case, the Court finds unpersuasive the debtors' attempt to link their sale of land to the sale of farm machinery in *Armstrong* as income from a farming operation. Although the typical farming operation involves both land and machinery, it goes without saying that land, by its very nature, has many uses other than farming, whereas farm machinery is specific in its function. The *Armstrong* court implicitly recognized the limited character of farm machinery when it observed that the debtor's equipment was "purchased to work [his farm]" and was thus "inescapably interwoven" with the debtor's farming operation. *Armstrong,* 812 F.2d at 1026.

■ By contrast to farm machinery, land is a more versatile asset and, while essential to most farming operations, can be owned for other purposes, including investment or speculation. When a debtor sells land that is held for investment or speculation, the resulting income is manifestly not "income from a farming operation." *See In re Van Fossan,* 82 B.R. 77, 78–81 (Bankr.W.D.Ark.1987) (income from the sale of land which debtor admitted was held only for speculative purposes was not farm income). Here, the debtors themselves characterize the land sold in the year preceding bankruptcy as "acreage from [a] real estate development." While this land has been used as a hay field in the recent past, the debtors apparently considered it to be investment property at the time it was sold. In any event, their characterization of the subject property as part of a "real estate development" belies their present assertion that it represented an integral part of their farming operation

or that income from its sale constitutes farm income. The debtors' sale of land, therefore, is distinguishable from the sale of farm machinery in *Armstrong* because of the nature and use of the property sold.

The most compelling distinction between *Armstrong* and the present case, however, is the debtors' failure to make any showing that their pre-bankruptcy sale of land was motivated, as in *Armstrong,* by a desire to downsize their farming operation in order to "save the farm." *Id.* at 1026. The *Armstrong* court repeatedly emphasized that its ruling concerning the sale of farm machinery was premised on the debtor's testimony that the property was sold in an effort to keep the farming enterprise, "in its failed form, afloat." *Id.* at 1027. The court, noting that Congress chose to enact special provisions for farmers because of the "risk-ridden" nature of farming, concluded that it would be contrary to legislative intent to disqualify income from a farmer's sale of assets when such sale was occasioned by the farmer pruning his operations in order to continue farming. *Id.*

In this case, there is no indication either in the debtors' statements or in counsel's argument that the debtors sold the 18 acres at issue in order to save a financially troubled farm. Rather, according to counsel, the sale was occasioned by the debtors' "good fortune in having someone build a golf course" across the road from them. The implication of this statement is that the debtors sold the land, not to save a failing farm, but to take advantage of a business opportunity. Indeed, counsel's various statements—that Chapter 12 allows debtors to use assets they have "most

---

**6.** *Cf. In re Bircher,* 241 B.R. 11, 15–16 (Bankr. S.D.Iowa 1999) (proceeds from land sold to enable debtors to continue farming constituted farm income); *In re Van Fossan,* 82 B.R. 77, 81 (Bankr.W.D.Ark.1987) (proceeds from land that was held only for speculation did

not constitute farm income). *See also In re Koppes,* No. 99–01748–D, 2000 WL 150836, at *4–*5 (Bankr.N.D.Iowa Jan.5, 2000) (sale of cattle and farm equipment); *In re Barnett,* 162 B.R. 535, 537 (Bankr.W.D.Mo.1993) (sale of farm equipment).

effectively," that the debtors did the "right thing" in "realiz[ing] the highest return possible" from their assets, and that the debtors made "a sound business decision" in getting the "highest and best use" of their real estate—merely reinforce the Court's conclusion that the debtors' income from the sale of land to the golf course was not farm income, but investment income.[7] As such, it may not be included as "farm income" in calculating the debtors' eligibility for Chapter 12 relief.

■ Whether debtors in a particular case qualify as "family farmers" eligible to file under Chapter 12 is dependent on the facts of that case, and the debtors, as the parties filing the bankruptcy petition, bear the burden of establishing such eligibility. *See In re Sohrakoff*, 85 B.R. 848, 850 (Bankr.E.D.Cal.1988). While the Court in this case does not question the debtors' sincerity or their good faith in selling the subject property in the year prior to bankruptcy, the Court cannot find, on the evidence presented, that the debtors' income from the sale of the 18 acres in question constituted farm income. The debtors, therefore, do not meet the 50 percent farm income test for "family farmers" under § 101(18). Accordingly, the Bank's motion to dismiss the debtors' Chapter 12 petition will be granted.

SEE WRITTEN ORDER.

---

7. While not relevant in determining the debtors' compliance with the 50 percent farm income test of § 101(18), the debtors' history of selling 4.5 acres in 1997 and 8.35 acres in 1996 is consistent with the Court's finding that their sale of land was for investment purposes, rather than an effort to downsize their farming operation in order to continue farming.