**In re Paul R. SWANSON, Sr., Debtor.**

No. 02–82992.

United States Bankruptcy Court,
C.D. Illinois.

Jan. 29, 2003.

Roger C. Bolin, Hennepin, IL, for debtor.

Gary T. Rafool, Peoria, IL, for creditor.

### OPINION

THOMAS L. PERKINS, Bankruptcy Judge.

This matter came before the Court for an evidentiary hearing on several issues, including confirmation of the Chapter 12 plan filed by the Debtor, Paul R. Swanson, Sr., ("DEBTOR"), as well as three motions filed by Union Bank/Central (the "BANK"), for relief from the automatic

stay, to dismiss the Chapter 12 case, and for the DEBTOR to show cause why he will not allow the BANK'S appraiser access to the farm property. Based on the evidence received at trial, the Court finds that the BANK'S motion to dismiss should be granted on the basis that the DEBTOR is not eligible for Chapter 12 relief since he is not a family farmer.

■ Only a family farmer with regular annual income may be a debtor under Chapter 12. 11 U.S.C. § 109(f). "Family farmer" is defined in Section 101(18) of the Bankruptcy Code, in pertinent part, as follows:

(18) "family farmer" means-

(A) individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed.

11 U.S.C. § 101(18)(A). At issue is whether the DEBTOR earned from a farming operation more than fifty percent (50%) of his gross income for the taxable year 2001, which is conceded to be the taxable year preceding the taxable year in which his case was filed.

Based on the evidence received at trial, the Court finds that the DEBTOR'S gross income for 2001 is itemized as follows:

| Amount | Source of Income |
|---|---|
| $39,750 | Cash rent received from annual lease of DEBTOR'S farm real estate. |
| 36,454 | DEBTOR'S half interest in proceeds from sale of hogs, cattle and grain. |
| 219 | Interest income |
| 7,992 | Social Security |
| 2,000 (est.) | Del Monte wages |

There is no dispute that the $36,454 from the sale of livestock and grain is income derived from a farming operation, and that the income from social security, Del Monte and interest is not derived from a farming operation. Accordingly, the DEBTOR'S eligibility for Chapter 12 turns on whether the cash rent is or is not income received from a farming operation.

"Farming operation" is defined in Section 101(21) of the Bankruptcy Code, as follows:

(21) "farming operation" includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state.

11 U.S.C. § 101(21).

In support of its position that cash rent received from the lease of farm ground is not income from a farming operation, the BANK relies upon *In re Armstrong,* 812 F.2d 1024 (7th Cir.1987), *In re Ross,* 270 B.R. 710 (Bankr.S.D.Ill.2001) and *In re Seabloom,* 78 B.R. 543 (Bankr.C.D.Ill.1987) (Altenberger, J.).

The issue in *Armstrong* was whether the debtor was a "farmer" who, by virtue of that status, could not be forced into bankruptcy via an involuntary petition filed pursuant to Section 303. Since the Bankruptcy Code's definition of "farmer" at Section 101(17) is tied to the percentage of gross income received from a farming operation, it was necessary to the court's decision to construe the definition

of "farming operation" at Section 101(18).[1] Specifically, the Seventh Circuit considered whether money received by the debtor from acreage rented to a third party was income received from a farming operation. Because the lease payment of approximately $17,000 was paid by the tenant "in cash and up front," the court reasoned that the traditional risks associated with growing crops were assumed entirely by the tenant. Rejecting the debtor's argument that he actively participated in the tillage of the crops and provided fertilizer, the court determined that the rental income was non-farm income for the purpose of the Bankruptcy Code definitions of "farmer" and "farming operation." On this basis, the court held that the debtor did not meet the definition of a farmer and could be subjected to an involuntary filing.

In *Seabloom*, a case arising out of a voluntary Chapter 12 filing, the court held that the debtors failed to qualify as family farmers since less than fifty percent (50%) of their 1985 income was received from a farming operation and dismissed the petition. The debtors' cash rent lease called for a portion of the rent to be paid up front and the balance paid after sale of the crops. Judge Altenberger rejected the debtors' attempt, on that basis, to distinguish their lease from the lease in *Armstrong*, reasoning that since the obligation to pay the rent was absolute and not contingent upon the crop yields or prices, the risks were solely on the shoulders of the tenant. The issue in *Ross* was whether income derived from the *sale* of farmland was farm income. *Ross* did not involve a cash rent lease and is inapposite.

The DEBTOR argues that *Armstrong*, involving a question of eligibility for an involuntary filing, is not binding precedent on the issue before this Court. The DEBTOR would have this Court apply a totality of the circumstances analysis such as used by the bankruptcy courts in *In re Coulston*, 98 B.R. 280 (Bankr.E.D.Mich. 1989) and *In re Hettinger*, 95 B.R. 110 (Bankr.E.D.Mo.1989). Rejecting *Armstrong's* "mechanistic risk analysis approach," the *Coulston* court held that cash rent could be farm income where the debtor "behaved historically as a farmer" and "had both an honest intention and a reasonable probability of returning to 'true' farming." 98 B.R. at 283. The court determined that Mr. Coulston met this two-part test and ruled that the cash rent he received in the year prior to bankruptcy was farm income thereby making him eligible for Chapter 12 relief.

Over the BANK'S objection, this Court allowed the DEBTOR to testify as to his farming history and future plans. The Court must now consider whether it is bound by *Armstrong's* determination that cash rent "paid in full and up front" is not farm income.

■■■ The binding precedent rule, that lower courts must follow the holdings of their court of appeals and the Supreme Court, affords a lower court no discretion where a higher court has already decided the issue before it. *Johnson v. DeSoto County Bd. of Com'rs*, 72 F.3d 1556, 1559 n. 2 (11th Cir.1996). Lower courts are not bound to follow a higher court's dictum. *U.S. v. Crawley*, 837 F.2d 291 (7th Cir. 1988). Generally, a court's statement is dictum if it is not necessary for its decision. *Id.* at 292. Statements that explain the court's rationale are part of its holding.

---

1. The definition of "farmer" now appears at Section 101(20) and the definition of "farming operation" is at subsection (21). Despite the numerical shift, the language defining "farming operation" is unchanged.

*U.S. v. Bloom,* 149 F.3d 649, 653 (7th Cir.1998).

 There is simply no doubt that the Seventh Circuit's determination in *Armstrong,* that cash rent, paid in full and up front, is not income received from a farming operation, is part of its holding. That determination was necessary to the result, and was in no way gratuitous. Both the definition of "farmer" at issue in *Armstrong* and the definition of "family farmer" at issue here, are measured by the same percentage of gross income test, even though the percentages are different. The key term of both definitions is "farming operation." Even though the ultimate issue in *Armstrong* was different than the one before this Court, the question of whether cash rent is income derived from a "farming operation," necessary to resolution of both cases, is identical.

Neither is *Armstrong* distinguishable on its facts. As in *Armstrong,* the DEBTOR'S lease was paid in full and up front. Although the DEBTOR could not recall if the rent was paid in one payment or two, it was fully paid at the beginning of the crop year 2001. On the facts in the record, even the argument rejected by Judge Altenberger in *Seabloom,* that a portion of the rent paid at the end of the year distinguishes *Armstrong,* is not available to the DEBTOR here.

*Armstrong* is binding precedent that controls the outcome here. Following that precedent, the cash rent received by the DEBTOR in 2001 is not income received from a farming operation. Less than fifty percent (50%) of the DEBTOR'S gross income for taxable year 2001 was received from a farming operation. Therefore, the DEBTOR was not a family farmer at the time he filed his Chapter 12 petition and the petition must be dismissed. Given this result, it is not necessary for the Court to address the other pending motions which are now moot.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.